**Nos. 16-1668, 16-2051, and 16-2052**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| KIMTYLERY HENG & OL CHHEN, on behalf of a class, Plaintiffs-Appellants, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| No. 16-1668            v. | No. 1:15-cv-08454 |
| HEAVNER, BEYERS & MIHLAR, LLC, Defendant-Appellee. | Charles R. Norgle, Judge. |
| JUSTIN GIERKE, on behalf and a class, Plaintiff-Appellant, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| No. 16-2051            v. | No. 1:15-cv-11618 |
| CODILIS & ASSOCIATES, P.C., Defendant-Appellee. | Robert W. Gettleman, Judge. |
| LAURA ZUNIGA and Juana Apzaith-Sanchez, on behalf of a class, Plaintiffs-Appellants, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| No. 16-2052            v. | No. 1:16-cv-01897 |
| PIERCE AND ASSOCIATES, Defendant-Appellee. | Milton I. Shadur, Judge. |

### CONSOLIDATED REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Daniel A. Edelman (Counsel of Record)
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
courtecl@edcombs.com
*Counsel for Plaintiffs-Appellants*

### ORAL ARGUMENTS REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES.................................................................iv

SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ................................................................................... 2

**I.**   DEFENDANTS' ARGUMENT IS BASED ON MATERIAL WHICH THEY
      IMPROPERLY INCLUDED IN THE APPENDIX, WHICH IS NOT IN THE
      COMPLAINTS, AND NOT A PROPER BASIS OF DECISION....................2

**II.**  DEFENDANTS THREATEN TO SEEK A DEFICIENCY THEY NEVER
      WERE AUTHORIZED TO PURSUE, IN VIOLATION OF THE FDCPA.........3

    **A.**   Defendants' Statements in the Foreclosure Complaints are Threats
           to Take Action............................................................................3

    **B.**   Nothing in HUD Regulations "Preserves" a Mortgagee's Right to
           Seek a Deficiency Judgment......................................................5

    **C.**   Defendants Knew the FHA Would Not Authorize a Deficiency
           Judgment................................................................................12

    **D.**   Defendants had no Legitimate Reason To Claim They Could Seek a
           Deficiency...............................................................................16

    **E.**   Defendants had no Particularized Intention of Seeking a Deficiency
           Judgment................................................................................19

    **F.**   The FDCPA Applies to Statements Made in State Court
           Pleadings................................................................................21

**III.** THE DISTRICT COURT IN *HENG* ERRED IN STRIKING THE BAYVIEW
      LETTER AND IN REFUSING TO ALLOW PLAINTIFFS TO EITHER CITE
      THE BAYVIEW LETTER OR AMEND TO INCLUDE IT IN THE
      COMPLAINT..............................................................................22

**IV.**    CONCLUSION..................................................................................23

## TABLE OF AUTHORITIES

### Cases

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) ..................................................... 19

*BAC Home Loans Servicing, LP v. Taylor*, 986 N.E.2d 1028 (Ohio Ct. App. 2013) ...................................................................................................... 12

*Bankers Life Co. v. Denton*, 458 N.E.2d 203 (Ill. App.1983) .............................. 9

*Bentrud v. Bowman, Heintz, Boscia & Vician*, 794 F.3d 871 (7th Cir. 2015)........ ...................................................................................................... 21, 22

*Early v. Banker's Life and Cas. Co.*, 959 F.2d 75 (7th Cir. 1992) .................... 23

*Lacy-McKinney v. Taylor Bean & Whitaker*, 937 N.E.2d 853 (Ind. Ct. App. 2010) ...................................................................................................... 10

*Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012) ............................................... 19

*Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 15-3273, 2016 WL 4651403 (7th Cir. Sept. 7, 2016).................................................................... 4, 20

*Oglesby v. Rotche*, 93 C 4183, 1993 WL 460841 (N.D. Ill. Nov. 5, 1993) ......... 19

*Rosa v. Gaynor*, 784 F.Supp. 1, 5 (D. Conn. 1989)......................................... 16

*Seabrook v. Onondaga Bureau of Medical Economics, Inc.*, 705 F.Supp. 81 (N.D. N.Y. 1989)............................................................................................ 19

*Tenuto v. Transworld Systems, Inc.*, No. CIV. A. 99-4228, 2000 WL 1470213 (E.D. Pa. Sept. 29, 2000).......................................................................... 19

*U.S. Bank Nat. Ass'n v. Luckett*, 987 N.E.2d 47 (Ill. App. 2013) ....................... 2

*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131 (4th Cir. 1996) ................. 18

**Statutes, Rules & Regulations**

15 U.S.C. §1692e(5) ................................................................. 18, 19

735 ILCS 5/15-1504(a)-(b) ........................................................... 21

735 ILCS 15-1508(e) ................................................................. 7, 20

12 U.S.C. § 1701t........................................................................ 9, 13

Fed. R. Civ. P. 12(b)(6).................................................................. 14

24 C.F.R. § 203.257 ...................................................................... 7

24 C.F.R. § 203.295 ...................................................................... 7

24 C.F.R. § 203.315 ...................................................................... 7

24 C.F.R. § 203.317 ...................................................................... 7

24 C.F.R. § 203.369 ...................................................................... 8

24 C.F.R. § 203.401(a) ................................................................ 16

24 C.F.R. § 203.401(b)(1) ............................................................ 17

24 C.F.R. § 203.402(o) ................................................................. 8

24 C.F.R. § 203.500 ...................................................................... 9

24 C.F.R. § 203.501 ..................................................................... 14

24 C.F.R. § 203.604 ...................................................................... 9

24 C.F.R. § 203.605 ..................................................................... 14

24 C.F.R. § 203.605(a) ...................................................................... 9

24 C.F.R. § 203.606 ........................................................................... 9

24 C.F.R. § 204.402 .................................................................... 16, 17

52 Fed. Reg. 1320 (January 13, 1987) ............................................ 8

52 Fed. Reg. 4507 (February 12, 1987) ........................................... 7

53 Fed. Reg. 4385 (Feb. 16, 1988) ................................................... 8

**Other Authorities**

FHA Single Family Housing Policy Handbook" HUD Handbook 4000.1, rev.

   June 30, 2016 ............................................................................. 5

Administration of Insured Home Mortgages, Handbook 4330.1 rev-5,

   (September 29, 1994) ................................................................ 16

HUD Mortgagee letter 2013-15 ..................................................... 14

HUD Mortgagee Letter 2006-15 ..................................................... 14

## SUMMARY OF ARGUMENT

Defendants, who claim extensive experience handling mortgage foreclosure cases, knew at the outset of the foreclosure litigation that under longstanding FHA policies, the FHA had to authorize them to seek deficiency judgments against Plaintiffs, and there was no chance the FHA would do so. Yet Defendants chose to ignore those policies and the circumstances surrounding each borrower's default to threaten in their foreclosure complaints a remedy they had not been and would not be authorized to seek, thereby violating the FDCPA.

Defendants do not argue that they had any intention of actually seeking deficiency judgments against Plaintiffs. Instead, they argue that because they theoretically could make the financially absurd choice of foregoing FHA insurance benefits to pursue Plaintiffs for deficiency judgments that they were entitled to makes threats of such an extreme remedy. They were not.

In any event, Defendants could have completed the foreclosure complaints in a manner that both truthful and preserved their rights.

1

## **ARGUMENT**

**I.    DEFENDANTS' ARGUMENT IS BASED ON MATERIAL WHICH THEY IMPROPERLY INCLUDED IN THE APPENDIX, WHICH IS NOT IN THE COMPLAINTS, AND NOT A PROPER BASIS OF DECISION**

Recognizing that they cannot prevail based on the record properly before the District Court, Defendants base much of their argument on assertions not in the record and therefore not properly before the Court on review of a 12(b)(6) dismissal.

First, Defendants state that they were acting at the direction of their mortgagee clients in completing the foreclosure complaints. (Resp. p. 8). However, nothing in the record establishes that either HUD or Defendants' clients directed Defendants in completing the complaint with regards to deficiency judgments. The Court cannot simply assume that is the case.  It is more likely that Defendants completed the foreclosure complaints automatically without regard to the circumstances of each individual case or specific direction from their clients. *See, e.g., U.S. Bank Nat. Ass'n v. Luckett*, 987 N.E.2d 47, 53 (Ill. App. 2013) ("We can take judicial notice that courts across the nation are adjudicating a huge number of foreclosure cases . . . and that the lenders use law firms which litigate these cases in high volume. That high volume, in turn, means that pleadings are generated through 'search and replace' word processing features.")

Defendants also claim that HUD transferred its interest in the mortgage

at issue in the *Heng* foreclosure and that the loan is no longer insured by the FHA, (Resp. p.8 n.2), and they ask the Court to take judicial notice of the attached motion to substitute party and order from the underlying foreclosure case. However, even if the circuit court's order is subject to judicial notice, nothing about a substitution of Bayview Loan Servicing, LLC, for Bank of America, N.A., establishes that the loan at issue in *Heng* is no longer insured by the FHA, and that supposed fact is not in the record. Additionally, the mortgages and notes attached to the state court foreclosure complaints state that the mortgagees' rights to require immediate payment on default are "limited by regulations issued by the Secretary [of HUD]" and make other references to requirements placed on the mortgagees as a result of the FHA insurance. (App. 42, 50; *Heng* R. 23-1, at pp. 175, 183; *Gierke* R. 1-1, at pp. 19, 28; *Zuniga* R. 1-1, at pp. 23-24, 29). Nothing presented by Defendants demonstrates that such FHA requirements no longer apply, and that supposed fact is also not otherwise supported by the record.

Accordingly, the Court should disregard these assertions in reviewing the questions presented.

## II.   DEFENDANTS THREATEN TO SEEK A DEFICIENCY THEY NEVER WERE AUTHORIZED TO PURSUE, IN VIOLATION OF THE FDCPA

### A.   Defendants' Statements in the Foreclosure Complaints are Threats to Take Action

Defendants repeatedly characterize the statements in state court

3

foreclosure complaints as merely preserving the right to request a deficiency judgment at a later date, not threats. However, an unsophisticated consumer reading those statements would take them at face value — a threat that if the house did not bring enough to satisfy the debt, Defendants would attempt to impose personal liability. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 15-3273, 2016 WL 4651403, at *4 (7th Cir. Sept. 7, 2016) (evaluating statements under the FDCPA's unsophisticated consumer standard by doing a "plain reading" of them as the consumer would).

The language that Defendants argue is conditional does not negate the threatening nature of the personal liability allegation. The foreclosure complaints allege that plaintiffs are "claimed to be personally liable for deficiency, if any" and the prayers for relief seek "A personal judgment for a deficiency, if sought." The only thing that is "conditional" is that the property must sell for less than the debt. There is no condition whatever about Plaintiffs' personal liability or the mortgagees' enforcement of that liability if the property does not sell for enough.

An unsophisticated consumer is not familiar with Illinois foreclosure procedure or FHA requirements. Most foreclosure defendants are not represented by counsel. An unsophisticated consumer — or even a sophisticated one — would read the identification of persons "claimed to be personally liable for deficiency, if any" at face value. Such a consumer would

also read the "if sought" in the request for relief to mean "if one was sought in the statements above," not "if HUD directs us to seek a deficiency" or "if we seek one later at the hearing to confirm the sale held pursuant to 735 ILCS 5/15-1508" as Defendants would have the Court read it.

The most natural reading of "if any" and "if sought" is that if there is a deficiency, the foreclosure plaintiff will seek to impose personal liability on the persons identified as "claimed to be personally liable for deficiency." Given the requirement of HUD authorization and the very small likelihood of such authorization, Defendants' statements are misleading as a matter of law.

### B.     Nothing in HUD Regulations "Preserves" a Mortgagee's Right to Seek a Deficiency Judgment

 HUD regulations and policies makes clear that HUD will only seek deficiency judgments in cases of fraud, abuse, or strategic default—not in cases of "genuine hardship" such as in Plaintiffs' situations. (App. 57). Defendants do not dispute that fact. Instead, they argue that the regulations authorize them to "preserve" a mortgagee's right to see a deficiency judgment without HUD's authorization. Defendants arguments are unavailing.

Defendants argue that the "FHA Single Family Housing Policy Handbook" (HUD Handbook 4000.1, rev. June 30, 2016, http://portal.hud.gov/hudportal/documents/huddoc?id=40001HSGH.pdf) gives a mortgagee the option to pursue a deficiency judgment if it chooses not to file a claim for insurance benefits. However, Defendants take the cited

language out of context and misread the effect of the Handbook language. The cited language says only that a mortgagee can choose to *collect* a deficiency judgment that has already been obtained if it does not file a claim for insurance benefits. *Id.* at 706. It does not say the lender can decide whether to request the deficiency judgment in the first place. In fact, the introduction to the section of the Handbook that Defendants cite states: "Where the mortgaged property is sold at the foreclosure sale for less than the unpaid balance of the debt, *HUD* may seek a deficiency Judgment. . . ." *Id.* at 705 (emphasis added). Defendants point to no other language from the Handbook that takes the decision to pursue a deficiency judgment away from HUD.

Defendants also quote language from the HUD policies that Plaintiffs attached as exhibits to their complaints stating that "[a]ll deficiency judgments obtained must never be subject to collection by the mortgagee, and must be assigned to the Department within 30 days, unless the mortgagee decides to terminate the mortgage insurance and not file a claim for FHA benefits in that case" to support their argument that they can choose to terminate the insurance in order to seek a deficiency judgment without the required authorization from the FHA. (Resp. p. 5, citing App. 56). Effectively, Defendants argue they can chose to terminate insurance benefits at any time to bypass HUD's wishes regarding deficiency judgments.

However, a mortgagee is not free to unilaterally terminate insurance

6

whenever it pleases. Once a mortgage is insured, HUD "and the mortgagee are . . . bound by the regulations . . . with the same force and to the same extent as if a separate contract had been executed relating to the insured mortgage." 24 C.F.R. § 203.257. The only time the mortgagee can terminate the insurance contract without the consent of the mortgagor is after it or a third party has acquired title to the property. 24 C.F.R. §§ 203.295, 203.315, 203.317. In Illinois, because a mortgagee or third party acquires a property only after the confirmation of a foreclosure sale—the same time any deficiency judgment would also be awarded per 735 ILCS 15-1508(e)—a mortgagee in Illinois necessarily cannot unilaterally terminate the mortgage insurance until after a deficiency judgment has already been awarded. Accordingly, while the language cited by Defendants may indicate that they can choose to forego insurance benefits in order to *collect* a deficiency judgment once one is entered, it again does nothing to show that they can terminate insurance benefits in order to request a deficiency judgment from the court in the first place without HUD's authorization to do so. That decision belongs to HUD at all relevant times.

The history of HUD's regulations also demonstrates HUD's intent to dictate when deficiency judgments are sought. It first became feasible for HUD to request that a mortgagee seek a deficiency judgment with the adoption of the claims without conveyance of title ("CWCOT") procedures in 1987. *See* 52 Fed. Reg. 4507, 4507 (February 12, 1987) (noting that before HUD was able to

prescribe the amount for a mortgagee to bid at a foreclosure sale under CWCOT procedures, a mortgagee would typically bid the amount remaining on the debt at the foreclosure sale in order to assure it either acquired the title to convey or were otherwise made whole by purchase from a higher bidder, thereby leaving no deficiency). When it adopted the final rule implementing these CWCOT procedures on July 13, 1987, in anticipation of the planned proposed rule on deficiency judgments, HUD included 24 C.F.R. § 203.402(o), which allowed for full reimbursement of costs incurred in seeking deficiency judgments. 52 Fed. Reg. 1320 (January 13, 1987).

The commentary to § 203.402(o) concludes: "Under the policy to be implemented under this rule, *mortgagees will be pursuing deficiency judgments only in those selected cases in which HUD has so requested." Id.* at 1323 (emphasis added).

Shortly after adoption of the CWCOT procedures, HUD adopted the rule that included § 203.369, allowing it to require the pursuit of deficiency judgments. 53 Fed. Reg. 4385 (Feb. 16, 1988). With the CWCOT and deficiency judgment rules in place, HUD issued Mortgagee Letter 89-14, (App. 65-69), establishing that it would seek deficiency judgments only in cases of fraud or abuse. (App. 66). These are the precise policies HUD had planned when it stated that "mortgagees will be pursuing deficiency judgments only in those selected cases in which HUD has so requested." 52 Fed. Reg. 1320, 1323. Once

again, HUD indicated that the decision to seek a deficiency judgment was its decision alone.

HUD's limiting deficiency judgments to cases of abuse is also consistent with the purpose of the FHA insurance program. The National Housing Act under which FHA insurance programs were created states that its programs "are designed to assist families with incomes so low that they could not otherwise decently house themselves." 12 U.S.C. § 1701t. Although the regulations primarily define the contractual relationship between HUD and the lender, many of their provisions are explicitly intended to protect and benefit the borrower. For example, the regulations state: "It is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of [subpart C, defining mortgagors' servicing responsibilities] have been followed." 24 C.F.R. § 203.500. Those servicing requirements include that the mortgagee must have, or make a reasonable effort to arrange, a face-to-face interview with the mortgagor before three full monthly installments due on the mortgage are unpaid; must evaluate and implement loss mitigation options for a borrower before four monthly payments have been missed; and must review a mortgagor's file to determine whether all servicing requirements have been followed. 24 C.F.R. §§ 203.604, 203.605(a), 203.606.

In *Bankers Life Co. v. Denton*, 458 N.E.2d 203 (Ill. App.1983), the Illinois

Appellate Court held that a mortgagor may assert failure to comply with these HUD servicing requirements as an affirmative defense to foreclosure. It reasoned that "the primary beneficiaries of [the National Housing Act] and its implementing regulations are those receiving assistance through its various housing programs," and that mortgagors must be able to raise noncompliance with the regulations "in order to effectively insure that the interests of the primary beneficiaries of the H.U.D. mortgage servicing requirements are being protected." *Id.* at 205. Following the reasoning in *Denton*, the Court of Appeals of Indiana has also held that failure by a mortgagee to follow HUD servicing requirements may be raised as an affirmative defense to foreclosure, rejecting the lender's argument that regulations address only the relationship between the mortgagee and the government. *Lacy-McKinney v. Taylor Bean & Whitaker*, 937 N.E.2d 853, 859-64 (Ind. Ct. App. 2010).

The low-income homeowners that FHA insurance is meant to benefit are the very people least able to bear a deficiency judgment. Just as the FHA has adopted servicing requirements intended to protect low-income beneficiaries of its programs, it has also adopted policies intended to protect them from the further burden of deficiency judgments by limiting the pursuit of deficiency judgments to those cases involving abuse and fraud. Defendants' suggestion that HUD's regulations nevertheless "preserve" a mortgagee's right to independently decide whether to pursue a deficiency judgment and thereby

10

undermine the very purpose of the FHA insurance program and its deficiency

judgment policies is absurd.

The terms of the notes and mortgages at issue in these cases also

demonstrate that a mortgagee's rights are limited by HUD regulations. Each

note provides that "[i]f Borrower defaults by failing to pay in full any monthly

payment, then Lender may, except as limited by regulations of the Secretary [of

HUD] in the case of payment defaults, require immediate payment in full of the

principal balance remaining due and all accrued interest. . . . In many

circumstances regulations issued by the Secretary will limit Lender's rights to

require immediate payment in full in the case of payment defaults. This Note

does not authorize acceleration when not permitted by HUD regulations." (App.

50; *Heng* R. 23-1, at p.183; *Gierke* R. 1-1, at p. 28; *Zuniga* R. 1-1, at p. 29). The

mortgages contain similar language. Under the section captioned "Grounds for

Acceleration of Debt[,]" the mortgages provides that, "Lender may, except as

limited by regulations issued by the Secretary, in the case of payment defaults,

require immediate payment in full. . . ." Under subsection (d) of that section,

the mortgages provide that "[i]n many circumstances regulations issued by the

Secretary will limit Lender's rights, in the case of payment defaults, to require

immediate payment in full and foreclose if not paid. This Security Instrument

does not authorize acceleration or foreclosure if not permitted by regulations of

the Secretary." (App. 42; *Heng* R. 23-1, at p. 175; *Gierke* R.1-1, at p. 19; *Zuniga*

R. 1-1, at p. 23-24) HUD regulations were thereby incorporated into the note and made a part of the contract, thus limiting the rights of the mortgagees in matters governed by HUD regulations, including deficiency judgments. *See BAC Home Loans Servicing, LP v. Taylor*, 986 N.E.2d 1028, 1034 (Ohio Ct. App. 2013) (holding that morgagee's rights on default are subject to HUD regulations because language in note and mortgage incorporate them into the contract). Accordingly, mortgagees' rights to seek a deficiency are limited by HUD regulations and policies.

### C.  Defendants Knew the FHA Would Not Authorize a Deficiency Judgment

Although they chose to threaten Plaintiffs with deficiency judgments, Defendants knew at the time the foreclosure complaints were filed that the FHA had not authorized the pursuit of a deficiency judgment in years. The letter from HUD in response to a Freedom of Information Act request is cited by Plaintiffs not to establish what HUD policies are regarding deficiencies, but to show that its long-standing policies have resulted in HUD's authorizing *no* deficiency judgments in recent years, a fact that must have or should have been known to Defendants, who claim to have extensive experience in mortgage-related legal issues. The contents of the letter underscore the fact that Defendants were threatening to take action that they had not been authorized to take by the FHA and that they knew they would not be

12

authorized to take.

Defendants argue they cannot rely on the FHA's past restraint in seeking deficiency judgments to conclude that the FHA will continue to not seek deficiency judgments going forward. They assert that during the time period in which the FHA stated it had authorized no deficiency judgments in Illinois, there must have been some cases of abuse in which underwater homeowners walked away from their homes for financial benefit instead of an inability to pay and in which the FHA nonetheless declined to seek deficiency judgments. (Resp. p.7) Therefore, they argue, they cannot assume that just because no deficiency judgments were sought in those years that the FHA would continue to decline to do so.

First, Defendants cannot offer any more than speculation that any mortgagor with an FHA-insured loan chose to strategically default on their mortgages despite an ability to pay. Because the purpose of HUD's housing programs, including FHA insurance, is to "to assist families with incomes so low that they could not otherwise decently house themselves" afford a home, 12 U.S.C. § 1701t, it is quite possible that none of those defaulting on an FHA-insured loan during this time period chose to default despite an ability to pay.

More importantly, that the FHA may have declined to seek deficiency judgments when they might have been warranted in no way means it will begin requiring lenders to seek deficiency judgments when a borrower's

circumstances do not warrant it. Defendants do not and cannot allege that Plaintiffs engaged in abuse or otherwise fit the FHA's criteria for requiring the pursuit of a deficiency judgment. Plaintiffs allege that their defaults were due to hardship, facts which must be taken as true on a motion to dismiss under Rule 12(b)(6).

Because of various FHA servicing requirements, Defendants know or should know that Plaintiffs do not fit FHA criteria for deficiency judgments. Mortgagees are obligated under FHA regulations and policies to review each defaulted loan for loss mitigation options. *See* 24 C.F.R. §§ 203.605, 203.501 (requiring a mortgagee to evaluate defaulted loans for loss mitigation options including deeds in lieu of foreclosure, pre-foreclosure sales, partial claims, assumptions, and special forbearance). Any attempt at good-faith compliance with this obligation would reveal the more obvious reasons for default – death, illness, divorce, loss of employment.

Additionally, every mortgagee must submit specific data to the FHA after any default by a borrower. (App. 56; HUD Mortgagee letter 2013-15, available at http://portal.hud.gov/hudportal/documents/huddoc?id=13-15ml.pdf; HUD Mortgagee Letter 2006-15, available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_16747.doc). From this submitted data, the FHA will determine whether there are signs of fraud, abuse, or strategic default which warrant requiring the lender to pursue

14

a deficiency judgment. (App. 56).

Should HUD not request a deficiency judgment when a lender believes one is warranted, "the mortgagee can initiate the process by bringing information to the attention of the local HUD office indicating that a mortgagor meets the criteria for pursuit of a deficiency judgment." (App. 56) Further, HUD's "Administration of Insured Home Mortgages" Handbook states: "A mortgagee may request *approval* to pursue a deficiency judgment on any mortgage . . . where it deems such action appropriate, based upon an individual case determination and under applicable HUD criteria." (Administration of Insured Home Mortgages, Handbook 4330.1 rev-5, at section 9-7 (September 29, 1994), available at

http://portal.hud.gov/hudportal/documents/huddoc?id=43301hbHSGH.doc)

(emphasis added). In other words, had Defendants' clients suspected that the pursuit of a deficiency judgment might be warranted in these particular cases, they could have and *should* have asked the FHA whether to pursue one. Especially when in the vast majority of cases, no deficiency judgment is sought, the onus is on the mortgagee and its attorneys to find out from the FHA before filing a foreclosure complaint if a deficiency judgment will be authorized.

Defendants' argument has serious, pernicious consequences. State law usually provides many Draconian remedies that are almost never used. If the Court holds that it is permissible to refer to "A personal judgment for a

deficiency, if sought," when none has been authorized for years, it is also permissible to refer in an ordinary collection complaint to "Prejudgment attachment, if sought" and "A post-judgment body attachment, if appropriate" or "a finding of non-dischargeability in bankruptcy based on malice, if warranted." The fact that these remedies are difficult to obtain and are almost never sought would not, on Defendants' reasoning, be an obstacle to the routine inclusion of a highly-intimidating laundry list of "remedies" in collection complaints. *See Rosa v. Gaynor*, 784 F.Supp. 1, 5 (D. Conn. 1989) (holding that despite qualifying phrases that made the possible remedies threatened in a letter technically true, the inclusion of the list of such "dire consequences" violated the FDCPA because it was intended to intimidate the debtor).

### D. Defendants had no Legitimate Reason to Claim They Could Seek a Deficiency

Despite FHA policies, Defendants repeatedly assert that their clients *could* choose to forego filing a claim for FHA insurance benefits and collect a deficiency judgment instead. In other words, a mortgagee could elect not to recover its loss from the Government and instead pursue a borrower who has just demonstrated that they are not able to pay.

The regulations prescribing payment of insurance benefits demonstrate that such a choice would be wholly imprudent. If a mortgagee is the successful

bidder at the sale of a foreclosed property, it can convey the property to HUD and receive insurance benefits in the amount of the full unpaid principal balance plus costs of foreclosure and reimbursement for payments such as taxes and insurance. 24 C.F.R. §§ 203.401(a), 204.402. Or under the Claims Without Conveyance of Title program, it can retain the title—and therefore the value of the property—plus receive insurance benefits in the amount of the difference between the remaining unpaid balance and the price paid for the property plus costs. §§203.401(b)(1), 204.402. If a third party is the successful bidder, the mortgagee keeps the proceeds of the sale and will receive insurance benefits in the amount of the difference between the remaining unpaid balance and the price paid for the property plus costs. §§ 203.401(b)(1), 203.402. In any case, the mortgagee will have received the full amount of the remaining balance on the loan plus costs associated with the foreclosure process.

Defendants' hypothetical asks the Court to believe that a mortgagee would intentionally forego certain repayment of the entire outstanding balance of a loan plus reimbursement of the costs of foreclosure proceedings by the federal government in order to attempt to collect a deficiency judgment from a defaulting borrower. However, if a mortgagee chooses to forego insurance benefits, it can get no more in a deficiency judgment than it would have from insurance benefits, and it is left having to collect on the judgment, which can be discharged in bankruptcy, leaving it with nothing.

Defendants do not claim, nor does anything in the record suggest, that any mortgagee has ever engaged in such financial insanity. Many mortgagees are banks, which are legally required to follow safe and sound banking practices. Others are public companies, whose management also has a duty to act prudently, or trustees for investors, likewise required to act prudently. The notion that a rational bank executive would conclude that pursuing a deficiency against a poor person "could potentially be more lucrative" than asking the Government to pay (Resp. p.8), simply does not stand up to scrutiny. Defendants' theoretical option to forego insurance benefits therefore does nothing to demonstrate any actual intent to seek deficiency judgments.

Plaintiffs have alleged that Defendants knew or should have known that the FHA had not requested deficiency judgments in Illinois in years and that Plaintiffs' defaults were due to hardship, not any of the reasons for which the FHA would ever request a deficiency judgment. These facts are sufficient to support an inference that Defendants made threats to seek deficiency judgments and that they had no intention of actually seeking them. The district courts' contrary assumptions that Defendants "could not peer into the future to determine HUD's discretion in advance," (*Heng* R. 43, p. 4; App. 4), or do "not know at the time of filing the foreclosure complaint whether plaintiff has engaged in fraud or is a serial defaulter," (*Gierke* R. 27, p. 5 n. 4) were improper. Accordingly, Plaintiffs' Complaints are sufficient to withstand a

motion to dismiss.

###### E.    Defendants had no Particularized Intention of Seeking a Deficiency Judgment

*United States v. National Financial Services, Inc.*, 98 F.3d 131 (4th Cir. 1996), and similar decisions cited by Plaintiff clearly demonstrate that if Defendants had sent Plaintiffs letters threatening to seek deficiency judgments against them without a particularized intention to do so, those threats would have violated §1692e(5)'s prohibition on threatening to take an action that is not intended to be taken.

Defendants attempt to limit the applicability of these cases to threats made in *letters* to sue. However, there is no reason the particularized intention requirement should not also apply to requests for relief in a complaint seeking to collect a debt. The plain language of the prohibitions in §1692e(5) apply to "any action," not just the sending of a letter threatening the filing of a lawsuit. If anything a threat made in a complaint is more likely to "get the debtor's knees knocking," *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996), than a similar statement in a mere collection letter.

Also, decisions applying this language apply it to each threatened remedy. *See Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012) (statement that attorney's fees may be awarded when they may not is actionable, even if filing suit and obtaining a judgment is permissible); *Oglesby v. Rotche*, 93 C 4183, 1993 WL 460841, *8 (N.D. Ill. Nov. 5, 1993) (threat to garnish wages that are not

garnishable under applicable law violates the FDCPA); *Seabrook v. Onondaga Bureau of Medical Economics, Inc.*, 705 F.Supp. 81, 85 (N.D. N.Y. 1989); *Tenuto v. Transworld Systems, Inc.*, No. CIV. A. 99-4228, 2000 WL 1470213, *3 (E.D. Pa. Sept. 29, 2000). In other words, the fact that it is permissible to file a lawsuit does not mean that it is permissible to fill in the complaint to contain threats of a severe remedy that is not intended to be enforced against the particular defendant being sued.

The *Gierke* Court's opinion similarly misapplies the particularized intention test. It states: "<u>Nat'l Fin. Serv.</u>'s 'particularized intention' test requires that the defendant have an intention to sue or take action against a particular debtor, which is exactly what defendant has done here by suing plaintiff in state court." (*Gierke* R. 27 p. 6; App. 15). However, because a deficiency judgment is not ultimately requested until the motion to confirm the sale of the property under 735 ILCS 15-1508(e), the filing of a lawsuit does not itself demonstrate an actual intent to seek a deficiency judgment — certainly not when HUD restricts such judgments and HUD has not authorized one in the particular case. Accordingly, the statements regarding deficiency judgments are separate threats within the lawsuit to take actions at a later date, threats Defendants had no intention of actually carrying out.

**F**.    **The FDCPA Applies to Statements Made in State Court Pleadings**

Any doubt that the FDCPA applies to statements in pleadings was removed by this Court in *Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 15-3273, 2016 WL 4651403, at *3 (7th Cir. Sept. 7, 2016).

Citing *Bentrud v. Bowman, Heintz, Boscia & Vician*, 794 F.3d 871 (7th Cir. 2015), Defendants appear to argue that the FDCPA cannot be used to change what is required in the form suggested for foreclosure complaints by Illinois law. *See* 735 ILCS 5/15-1504(a)-(b) (providing a suggested form for foreclosure complaints and stating that "[a] foreclosure complaint need contain only such statements and requests called for by the form"). However, Defendants' citation to *Bentrud* is misplaced because Illinois does not mandate that a deficiency be sought, or that the complaint be filled out to request a deficiency if one will not be sought. Foreclosure complaints filed on reverse mortgages, other non-recourse loans, or where the borrower has obtained a bankruptcy discharge generally have the paragraph relating to deficiencies filled out, "none." There is no reason why it cannot be filled out accurately in cases involving FHA loans.

Defendants also cite *Bentrud* for its statement in dicta that when faced with a choice between "a possible malpractice claim . . . on the one hand, and a potential, albeit uncertain FDCPA violation, on the other," a reasonable attorney would choose the latter. *Bentrud*, 794 F.3d at 876. Defendants argue

21

that they would have potentially committed malpractice had they failed to allege that Defendants were personally liable for any deficiency and then some circumstance changed to justify seeking a deficiency judgment. Unlike in *Bentrud*, however, Defendants need not have chosen between preserving their clients' rights to pursue a deficiency and being truthful about their intent to seek a deficiency judgment. For example, they could have filled out the form complaint to state that Plaintiffs "are personally liable for any deficiency under the Note. However, FHA only pursues deficiencies under limited circumstances, such as in cases of fraud or abuse, and we have not been asked to seek one at this time." Nothing in Illinois law prohibits including such additional statements in the form foreclosure complaint to avoid offending other laws. In fact, in *Gierke* and *Zuniga,* Defendants included caveats that a deficiency judgment would not be sought against any party whose personal liability had been discharged in bankruptcy, presumably in order to avoid violating any bankruptcy discharge injunction. Defendants could just as easily have included a similar statement regarding deficiency judgments that would have avoided both potential malpractice and an FDCPA violation.

## III. THE DISTRICT COURT IN *HENG* ERRED IN STRIKING THE BAYVIEW LETTER AND IN REFUSING TO ALLOW PLAINTIFFS TO EITHER CITE THE BAYVIEW LETTER OR AMEND TO INCLUDE IT IN THE COMPLAINT

In *Heng*, the amended complaint alleged that the statements in

Defendant HBM's foreclosure complaint about a deficiency judgment would be understood by an unsophisticated consumer as a threat. (*Heng* R. 23, ¶¶29-32). When HBM claimed otherwise in its motion to dismiss, Plaintiffs offered a letter from Bayview Loan Servicing showing precisely how the statements in the complaint were not merely made to preserve the lender's rights, but were intended as threats made to enable the type of pressure exerted in the letter to extort money or property from the consumer by influencing their response to the foreclosure complaint — for example, to pursue a deed in lieu of foreclosure instead of defending the foreclosure and risking a deficiency judgment. The letter was not attached as evidence of a separate violation of the FDCPA for which HBM should be held liable. To consider it in deciding whether any set of facts existed that if proved would show the statements in the complaint would be interpreted as a threat by an unsophisticated consumer, the district court need not have converted the motion to dismiss into a motion for summary judgment. *Early v. Banker's Life and Cas. Co.*, 959 F.2d 75, 78 (7th Cir. 1992). Accordingly, the court's stated reason for striking the exhibit was erroneous.

## IV.    CONCLUSION

Plaintiffs have alleged that Defendants made threats to seek deficiency judgments when Defendants had not been authorized by the FHA to do so and otherwise had no intention to seek deficiency judgments, thereby stating a claim under the FDCPA.

Therefore, the district courts erred in dismissing Heng and Chhen's amended complaint, Gierke's complaint, and Zuniga and Apzaith-Sanchez's complaint. The district court in *Heng* also erred in refusing to consider the Bayview letter. Plaintiffs request that the judgments appealed from be reversed and that the cases be remanded for further proceedings.

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman (counsel of record)
Cathleen M. Combs
James O. Latturner
Francis R. Greene
Michelle A. Alyea
EDELMAN, COMBS, LATTURNER
      & GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

24

Christopher Kruger
Werner Gruber
KRUGER & GRUBER, LLP
500 N. Michigan Ave., Suite 600
Chicago, IL 60611
(773) 663-4949
(312) 268-7064 (FAX)
chris@krugerandgruber.com

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify on September 23, 2016 that a copy of the foregoing document was filed via the Court's CM/ECF system which caused notice to be sent to all counsel of record.

s/Daniel A. Edelman
Daniel A. Edelman

**STATEMENT PURSUANT TO CIRCUIT RULE 30**

I, Daniel A. Edelman, hereby certify that all of the material required by parts (a) and (b) of Circuit Rule 30 are included within the following Appendix.

s/Daniel A. Edelman
Daniel A. Edelman

**TYPE VOLUME CERTIFICATION**

In accordance with Fed.R.App.P. 32(a)(7)(C), I, Daniel A. Edelman, certify that this brief meets the type-volume limitation of the Seventh Circuit Rule 32(a) in that it contains 5,498 words according to the word-counting feature of Windows Microsoft Word, the program used to produce it.

s/Daniel A. Edelman
Daniel A. Edelman